**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Daniel D'Agostino,

           Plaintiff,

vs.

Comenity Capital Bank et al.,

           Defendants.

No.  CV-24-00728-PHX-SPL

**ORDER**

Before the Court is Defendant Comenity Capital Bank's Motion to Dismiss Plaintiff Daniel D'Agostino's First Amended Complaint ("FAC") (Doc. 36) and Defendant Bread Financial Payments, Inc.'s Motion to Dismiss Plaintiff's FAC (Docs. 38). The motions have been fully briefed and are ready for review. (Docs. 37, 39, 55, 57, 58, 59). The Court now rules as follows.

## I.    BACKGROUND

Plaintiff Daniel D'Agostino ("Plaintiff"), appearing pro se, brings suit against Defendants Comenity Capital Bank ("Comenity"); Comenity's parent company, Bread Financial Payments, Inc. ("Bread"); Midland Credit Management, Inc. ("Midland"); and Midland's parent company, Encore Capital Group, Inc. ("Encore"), alleging various violations of state and federal law. (Doc. 32 at 4–5). This case arises out of a dispute regarding a credit card account Plaintiff opened with Defendant Comenity on July 13, 2016. (Doc. 32 at 5).

Plaintiff alleges that he opened the credit card account over a phone call with a

Defendant Comenity representative, in which the representative told Plaintiff the account would have a zero-percent interest rate for the life of the loan and no additional fees beyond the principal amount borrowed. (*Id*.). Plaintiff alleges that the representative did not mention any written terms and conditions associated with the account. (*Id*.). That same day, Plaintiff used the credit account to purchase dental services totaling $697.50. (*Id.* at 6). Defendant Comenity later sent a written agreement outlining the accounts terms and conditions to Plaintiff, which Plaintiff did not see prior to the account's opening and initial use. (*Id.*). Plaintiff alleges that the verbal, not written, agreement controls in this case. (*Id.* at 9). Plaintiff subsequently began making regular payments on the credit card account, but noticed nearly a year later, in July 2017, "unauthorized charges and interest appearing on his account statements." (Doc. 32 at 10).

Plaintiff alleges that he promptly contacted Defendant Comenity to dispute the interest charges and fees, but that despite discussing his concerns with multiple company representatives, "Comenity failed to provide a satisfactory explanation for the unauthorized charges and interest and refused to make any corrections." (*Id.* at 11). On December 1, 2021, Plaintiff requested a full record of his account transactions, but Defendant Comenity allegedly failed to provide a complete record or to address the disputed charges and interest in its response on December 10, 2021. (*Id.* at 12). Plaintiff also alleges that Comenity reported negative information about Plaintiff's account to credit bureaus, which resulted in delinquencies appearing on his credit reports from July 2021 through December 2023. (*Id.* at 14). On May 2, 2023, Plaintiff mailed Defendant Comenity a letter detailing the history of the dispute, demanding a refund of all payments made other than the initial $697.50, and requesting Comenity to remove related negative items from his credit report, to which Comenity allegedly failed to respond. (*Id.* at 13–14). On December 29, 2023, Defendant Comenity closed Plaintiff's account and transferred it to Defendant Midland. (Doc. 32 at 15). Plaintiff alleges that Defendant Midland undertook "aggressive collection efforts, including threats of legal action" following the acquisition of his account throughout March 2024. (*Id.*).

On April 2, 2024, Plaintiff filed his pro se Complaint. (Doc. 1). Plaintiff filed his FAC on July 9, 2024. (Doc. 32). Plaintiff brings numerous claims alleging federal and state statutory violations and common law contract and tort injuries. (Doc. 32). Additionally, Plaintiff seeks to bring these claims on behalf of a potential putative class. (*Id.* at 19). Defendants Comenity and Bread filed their Motions to Dismiss on August 2, 2024. (Docs. 36, 38). Defendant Bread incorporates and joins Comenity's Motion. (Doc. 39 at 1).

## II.    LEGAL STANDARD

"To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8." *Jones v. Mohave Cnty.*, No. CV 11-8093-PCT-JAT, 2012 WL 79882, at *1 (D. Ariz. Jan. 11, 2012); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016) (Rule 12(b)(6) provides "the one and only method for testing" whether pleading standards set by Rule 8 and 9 have been met); *Hefferman v. Bass*, 467 F.3d 596, 599–600 (7th Cir. 2006) (Rule 12(b)(6) "does not stand alone," but implicates Rules 8 and 9). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *In re Sorrento Therapeutics, Inc. Sec. Lit.*, 97 F.4th 634, 641 (9th Cir. 2024) (citation omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL 79882, at *1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

///

### III.    DISCUSSION

Defendants Comenity and Bread argue that all counts against them in Plaintiff's FAC should be dismissed as they are (1) barred by their respective statute of limitations; (2) fail to state claims upon which relief may be granted; and (3) fail to provide any facts that would implicate Bread for any alleged wrongdoing of its subsidiary, Comenity. (Docs. 37 at 3–4; 39 at 1, 4).

#### a.  Breach of Contract and Covenant of Good Faith and Fair Dealing

Counts One and Eight allege common law claims for breach of contract and breach of the covenant of good faith and fair dealing against Defendants Comenity and Bread. (Doc. 32 at 23, 41). Defendants Comenity and Bread argue that these contract claims should be dismissed as time-barred, as more than three years have elapsed since the claims accrued. (Doc. 37 at 4–5). Plaintiff argues that the statute of limitations should be tolled because "Plaintiff first suspected potential intentional wrongdoing by Comenity on May 2, 2023" and "Plaintiff's full understanding of Comenity's intentional and systemic misconduct did not occur until March 4, 2024, during a conversation with an MCM [Midland] representative." (Doc. 55 at 7–8).

"Under Arizona law, a claim for breach of contract has three elements: (1) the existence of a contract between the plaintiff and defendant; (2) breach of the contract by defendant; and (3) resulting damage to the plaintiff." *Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 818 (D. Ariz. 2022). Under A.R.S. § 12-543, Plaintiffs have three years to bring claims arising out of oral contracts for debt accounts. "The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (2002).

Plaintiff's Exhibit C attached to the FAC shows that he received account statements that described the applicable APR and other charges, such as late fees, as early as December 2016, in contrast from the alleged verbal agreement. (Doc. 32-1 at 513). Even taking

Plaintiff's allegations as true that he did not notice the discrepancies between his alleged verbal agreement with Defendant Comenity and the terms it actually imposed on his account until July 2017, Plaintiff discovered the alleged breach—and his contract causes of action accrued—in July 2017. (Doc. 32 at 10). Whether Plaintiff learned or understood any new facts about wrongdoing or intentional misconduct years later has no bearing on the accrual of Plaintiff's breach of contract, and therefore, Plaintiff's Count One against Defendants Comenity and Bread must be dismissed. The Court finds leave to amend would be futile.

Although Plaintiff was put on notice of the breach of covenant of good faith and fair dealing in July 2017 at the latest, Plaintiff additionally argues for tolling of the breach of covenant of good faith and fair dealing claim because "Defendants' continued assurances that they would address the account issues prevented Plaintiff from discovering the full extent of their bad faith conduct." (Doc. 32 at 43). In Arizona, plaintiffs may receive equitable estoppel of a contractual limitation period "when a defendant induces a plaintiff to forbear filing suit." *Nolde v. Frankie*, 964 P.2d 477, 480 (1998). For estoppel by inducement to be appropriate, a plaintiff must show (1) "specific promises, threats or inducements by the defendant that prevented the plaintiff from filing suit"; (2) that the defendant's conduct *actually* caused the plaintiff's failure to timely file; (3) the defendant's conduct *reasonably* caused the plaintiff to forbear filing a timely action; and (4) the plaintiff filed suit within a reasonable time after termination of the conduct warranting estoppel. *Id*. at 480–81 (emphasis added).

Here, Plaintiff does not allege facts that satisfy these elements. While Plaintiff alleges that Defendant Comenity continually assured him that it would address the account issues (Doc. 32 at 20), "[n]othing in the Amended Complaint suggests that either party was contemplating litigation or that Defendants affirmatively induced Plaintiffs to forego litigation." *Hallmark Indus., Inc. v. Truseal Techs., Inc.*, No. CV-12-420-TUC-JGZ, 2013 WL 12190480, at *3 (D. Ariz. June 18, 2013). Additionally, Plaintiff does not allege facts showing that it was reasonable for him to rely on Defendant Comenity's assurances that

they would address the account disputes, when Comenity failed to address the account dispute throughout Plaintiff's four-year-long efforts to resolve the disputes from 2017 to 2021. (Doc. 32 at 11); *see also Roer v. Buckeye Irr. Co.*, 809 P.2d 970, 972 (Ariz. Ct. App. 1990) ("One cannot rely upon mere non-committal acts of another party to establish an estoppel against a party who raises the statute as a defense."). To that end, Plaintiff's allegations do not allege that Comenity's "conduct resulted in duress so severe as to deprive a reasonable person of the freedom of will to file the action." *Maycock v. Phoenix Motor Co.*, No. CV-17-01303-PHX-GMS, 2017 WL 6205527, at *4 (D. Ariz. Dec. 8, 2017). Therefore, Plaintiff is not entitled to tolling of the statute of limitations for his breach of covenant of good faith and fair dealing against Defendants Comenity and Bread. The Court finds that Count Eight must be dismissed and that leave to amend would be futile.

### b. Truth in Lending Act

Plaintiff alleges that Defendants Comenity and Bread violated the Truth in Lending Act's ("TILA") general disclosure requirements in various ways. (Doc. 32 at 26); 15 U.S.C. § 1601 et seq. Defendants Comenity and Bread allege that Plaintiff's TILA claims are barred by the statute's one-year statute of limitations. (Doc. 37 at 5); 15 U.S.C. 1640(e) ("[A]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation"). Plaintiff argues that the doctrines of equitable tolling, fraudulent concealment, and the discovery rule should extend the statute of limitations. (Doc. 55 at 8–9). Plaintiff proposes that the statute should be tolled until May 2, 2023, "when Plaintiff first suspected intentional misconduct," or March 4, 2024, "when Plaintiff discovered the systemic nature of Comenity's practices," due to Defendants' alleged fraudulent concealment of the TILA violations that prevented Plaintiff from discovering his cause of action. (*Id.* at 10).

TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). TILA

provides a one-year statute of limitations for legal damages claims. 15 U.S.C. § 1640(e). This statute of limitations runs either (1) "from the date of consummation of the transaction," or (2) when the doctrine of equitable tolling applies, "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986). Equitable tolling may apply "when the opposing party fraudulently conceals the operative facts underlying the TILA violation." *Colonial Sav., FA v. Gulino*, No. CV-09-1635-PHX-GMS, 2010 WL 1996608, at *6 (D. Ariz. May 19, 2010).

Here, taking Plaintiff's allegations as true, Defendant Comenity violated TILA by failing to disclose certain terms and conditions—namely, that the account would be subject to interest rates and additional fees—before Plaintiff conducted the first transaction on the account. (Doc. 32 at 9, 27). However, Plaintiff fails to show that Defendant Comenity fraudulently concealed the disclosures following the transaction, as required to warrant equitable tolling of Plaintiff's claim. Indeed, Plaintiff's Exhibit C attached to the FAC shows that he was put on notice that the account would accrue interest at an APR of 27.24% and other charges, such as late fees, as early as December 2016, in contrast from the alleged verbal agreement. (Doc. 32-1 at 513); *see also Ward v. Figure Lending LLC*, No. CV-23-08116-PCT-SPL, 2023 WL 4959742, at *2 (D. Ariz. Aug. 3, 2023) ("Plaintiff argues that Defendant conceals the fact that its loans are governed by TILA by marketing them as HELOCs, but the Complaint specifically alleges that the terms of the Loan Agreement show that Defendant does not actually provide a HELOC."). Even taking as true Plaintiff's allegation that he discovered the discrepancies related to the terms of the account agreement, interest rates, finance charges, and other fees in July 2017, nothing prevented him from comparing the verbal agreement disclosures, written account agreement and statements, and TILA's statutory and regulatory requirements at that time. *See Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996), *as amended on denial of reh'g* (Oct. 2, 1996). Because Plaintiff's Exhibit C shows that Defendant Comenity provided the account statements that reveal the interest rates and other charges applicable to Plaintiff's account

starting in late 2016—disclosing the operative facts underlying the TILA violation—the Court finds Plaintiff's various arguments that the statute of limitations should be tolled due to Defendants' representations that "they lacked the ability to provide information or correct errors" unconvincing. (Doc. 55 at 9).

Plaintiff also alleges that Defendant Comenity violated TILA's record retention requirements, which require creditors to retain evidence of compliance "for two years after the date disclosures are required to be made," by failing to provide Plaintiff complete records of the original account agreements and billing statements in a response to Plaintiff on December 10, 2021. *See* 12 C.F.R. § 1026.25; (Doc. 32 at 13). As Plaintiff alleges that the disclosures were required to be made before his first transaction on July 13, 2016, TILA did not require Defendant Comenity to maintain records related to compliance past July 13, 2018. (Doc. 32 at 9). Plaintiff alleges no facts that show that Defendant Comenity failed to keep records as required until 2018. Even if Defendant Comenity was required to keep the records until 2021, Plaintiff would have been on notice of such failure on December 10, 2021. Because Plaintiff did not bring this case until 2024, Plaintiff's record retention violation claim is also time-barred.

Lastly, Plaintiff argues that Defendant Comenity violated TILA by failing to properly respond to Plaintiff's billing error notices under 15 U.S.C. § 1666. (Doc. 32 at 28). Plaintiff does not specify the exact dates Defendant Comenity failed to respond, but Plaintiff's FAC provides that he undertook efforts to resolve discrepancies and disputes from 2017 to 2021. (*Id.* at 10). Even if each new failure to respond triggered a new statute of limitations to run, Plaintiff's bringing of this suit in 2024—three years after the alleged series of violations took place—means the claims are time-barred. As such, the Court finds that Plaintiff's Count Two TILA claims against Defendants Comenity and Bread must be dismissed and that leave to amend would be futile.

### c. Fair Credit Billing Act

Plaintiff also alleges that Defendants Comenity and Bread violated the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1602(g), by failing to properly respond and handle

Plaintiff's disputed billing errors in a variety of ways. (Doc. 32 at 28–29). Defendants Comenity and Bread argue the FCBA claims are time-barred by the statute's one-year statute of limitations. (Doc. 37 at 7). Plaintiff acknowledges that the statute of limitations precludes his claims, but argues that the statute should be equitably tolled because "Defendants failed to provide the required written explanations in response to Plaintiff's billing error notices, preventing Plaintiff from fully understanding the extent of the violations" and because the "Defendants' continued assurances that they would address the account issues prevented Plaintiff from discovering the full extent of the FCBA violations until recently." (Doc. 32 at 30). However, Defendants' alleged failure to properly handle and respond to Plaintiff's billing error notices form the factual allegations underlying the FCBA claim. Critically, a plaintiff "cannot rely on the same factual allegations to show that Defendants violated [TILA] and to toll the limitations period." *See Ward*, 2023 WL 4959742, at *2 (citations omitted). As such, Plaintiff's claims that Defendants Comenity and Bread violated the FCBA are barred by the FCBA's statute of limitations, and the Court finds that leave to amend would be futile.

### d. Fair Credit Reporting Act

Plaintiff alleges that Defendants Comenity and Bread willfully or negligently violated the Fair Credit Reporting Act ("FCRA"), by providing Plaintiff's account information to consumer reporting agencies, despite Plaintiff's disputes of the information's accuracy. (Doc. 32 at 31–32). Defendants Comenity and Bread argue that Plaintiff's claim is barred by the FCRA's two-year statute of limitations and fails to state a substantive claim under the statute. (Doc. 37 at 8–10).

The FCRA aims to ensure fair and accurate credit reporting, and it imposes duties on entities or "furnishers" that provide credit information to credit reporting agencies ("CRAs"). *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153–54 (9th Cir. 2009). Under subsection (a) of the statute, furnishers have a duty to provide accurate information to CRAs. *Id.* at 1154. Subsection (b) imposes investigative obligations on furnishers upon notice of dispute, "that is, when a person who furnished information to a CRA receives

9

notice from the CRA that the consumer disputes the information." *Id.* Under subsection (b), a furnisher's "duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger" them. *Id.*

Here, Plaintiff alleged violations of both subsections (a) and (b) fail to state a valid claim. (Doc. 32 at 32). To the extent Plaintiff seeks to allege violations of 15 U.S.C. § 1681s-2(a), Plaintiff's claims fail as "[d]uties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies." *Gorman*, 584 F.3d at 1154. Leave to amend would be futile with respect to these claims.

Plaintiff's subsection (b) allegations fail, as well. Plaintiff provides the conclusory assertion that "Defendants received notice of Plaintiff's disputes from the consumer reporting agencies but failed to conduct a reasonable investigation as required by the FCRA," but asserts no facts showing how a credit reporting agency provided such notice, when the notice was provided, or which credit reporting agencies provided such notice. (Doc. 32 at 33). Plaintiff does not allege that he contacted credit reporting agencies to alert them of inaccurate information. Plaintiff only alleges that he provided a direct complaint to Comenity in May 2023. (*Id*. at 14). However, this "would not have triggered any duty as it was unaccompanied by" a credit reporting agency notification. *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1106 (9th Cir. 2012). Plaintiff also alleges that Defendant Comenity violated the FCRA by failing to "properly investigate and verify the disputed information *before* reporting it to credit bureaus." (Doc. 32 at 14 (emphasis added)). But this allegation misunderstands the statutory investigative requirements, which are triggered after reporting information to a credit bureau and after receiving notice from the bureau. This claim's deficiency is further confirmed by Plaintiff's Response, where Plaintiff argues that his May 2, 2023 letter "constitutes notice to Comenity of the dispute, triggering their duty to investigate § 1681s-2(b)." The Ninth Circuit is clear that a credit reporting agency, not a consumer alleging harm, must provide notice to a furnisher of credit information to trigger the investigatory duties under subsection (b). *Gorman*, 584 F.3d at 1154.

The Court is further skeptical of Plaintiff's FCRA claims given the inconsistencies

regarding their timeliness. In the FAC, Plaintiff concedes that the statute of limitations passed before he brought this case. (Doc. 32 at 33). Plaintiff provided no specific dates regarding his discovery of the alleged FCRA violation in his FAC but alleged in his Response that he discovered the negative information on his credit report on March 19, 2024, when he pulled his credit report in preparation for this lawsuit. (Doc. 55 at 11). Plaintiff's Response also argues—on the same page—that he requested Comenity remove negative items from his credit report on May 2, 2023, from which the Court can infer that Plaintiff discovered the negative information long before March 19, 2024.[1] (*Id*.). Negative information related to the card was included on Plaintiff's provided credit reports as early as July 2021 (Docs. 32-1 at 622, 626, 635; 32 at 14). The Court is perplexed by Plaintiff's contradictory back-to-back arguments providing two different dates for the discovery of the negative information, which further conflicts with information provided in Plaintiff's credit report exhibits. (Docs. 32-1 at 622, 626, 635; 55 at 11).

In any event, none of the alleged dates point to the date that a credit reporting agency notified the furnisher, Defendant Comenity, of disputed information, which is required to trigger a claim under subsection (b) and the statutory period for bringing such a claim. Considering Plaintiff's repeated failure to show that a credit reporting agency provided notice to Comenity of alleged inaccurate information and Plaintiff's misguided reemphasis that his direct notice to Comenity sufficed to provide notice triggering FCRA duties, the Court is doubtful that facts exist showing otherwise. (Docs. 32 at 14; 55 at 11).

### e.  Fraudulent and Negligent Misrepresentation

Plaintiff brings claims of Fraudulent Misrepresentation and Negligent Misrepresentation against Defendants Comenity and Bread, as well. (Doc. 32 at 37, 39). Plaintiff alleges Defendants made false representations on the July 13, 2016, phone call

---

[1] While it is well-settled that plaintiffs may assert alternative and inconsistent claims or theories of liability under Fed. R. Civ. P. 8(d), the Court would like to remind Plaintiff that when presenting the Court a pleading or motion, a party certifies to the best of his knowledge, information, and belief that the factual contentions have evidentiary support. Fed. R. Civ. P. 11(b). Failure to abide by this rule may result in sanctions. Fed. R. Civ. P. 11(c).

that induced Plaintiff to enter the credit agreement. (*Id.* at 37, 39–40). Defendants argue that these claims are barred by their respective three-year and two-year statutes of limitations. (Doc. 37 at 10).

In Arizona, claims for fraudulent misrepresentation must be brought within three years of discovery. A.R.S. § 12–543(3). "A two-year limitations period applies to claims for negligent misrepresentation." *Chatha v. Marwah*, No. 1 CA-CV 23-0400, 2024 WL 3829635, at *3 (Ariz. Ct. App. Aug. 15, 2024), *as amended on denial of reconsideration* (Oct. 30, 2024). The cause of action accrues when an aggrieved party, by exercise of reasonable diligence should have discovered the defendant's tortious conduct. *Id.*

Again, Plaintiff argues these statutes of limitations should be equitably tolled because Plaintiff could not have discovered the fraud until Defendants began imposing interest and fees, Defendants actively concealed the fraud, and Plaintiff exercised reasonable diligence. (Doc. 32 at 38–39, 41). The Court finds this argument unavailing for reasons stated above: namely, the Plaintiff should have reasonably discovered the alleged misrepresentations as early as December 2016, when he received account statements that described the applicable APR and other fees (Doc. 32-1 at 513), or at the latest in July 2017, when he claims to have first noticed the discrepancies on his statements (Doc. 32 at 10).

Further, the Court is unpersuaded that Defendants "actively concealed the fraud by continuing to represent the account terms were as originally stated," as Plaintiff attached several documents showing that Defendant Comenity provided billing statements describing the APR and fee policies over the course of several years beginning in 2016. (Docs. 32-1 at 511–611; 55 at 13). On that contrary, it appears to the Court that Defendant Comenity sent Plaintiff statements relaying the information it allegedly "actively concealed" on a monthly basis. (*Id.* at 511–611). Additionally, the Court is unconvinced that Plaintiff diligently pursued his rights, as he waited nearly eight years after Defendant began imposing interest and fees contrary to its alleged verbal agreement—well after either applicable statute of limitations. As such, dismissal of Plaintiff's fraudulent and negligent

1    misrepresentation claims is warranted, and leave to amend would be futile.

2          **f. Unjust Enrichment**

3          Against all Defendants, Plaintiff alleges a common law unjust enrichment claim.

4    (Doc. 32 at 44). Plaintiff specifically alleges that Defendants Comenity and Bread were

5    enriched by receiving payments from Plaintiff based on unauthorized interest charges and

6    fees; obtaining the benefits of the agreement while failing to honor its terms; and profiting

7    from the sale of Plaintiff's account to Defendant Midland. (*Id.* at 44–45). Again,

8    Defendants argue the claim is barred by the statute of limitations (Doc. 37 at 14), which

9    Plaintiff argues should be equitably tolled (Doc. 55 at 15).

10          In Arizona, "[u]njust enrichment occurs when one party has and retains money or

11    benefits that in justice and equity belong to another." *Loiselle v. Cosas Mgmt. Grp., LLC*,

12    228 P.3d 943, 946 (Ariz. Ct. App. 2010) (citations and quotations omitted.). "To prevail

13    on an unjust enrichment claim, a plaintiff must prove: '(1) an enrichment; (2) an

14    impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the

15    absence of justification for the enrichment and the impoverishment; and (5) the absence of

16    a legal remedy.'" *Serrano*, 2012 WL 75639, at *7 (citing *Trustmark Ins. Co. v. Bank One,*

17    *Ariz. N.A.*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002)). A plaintiff must show that the

18    defendant retained a benefit at the plaintiff's expense and that it would be unjust for the

19    defendant to retain the benefit without compensating the plaintiff. *Span v. Maricopa Cnty.*

20    *Treasurer*, 437 P.3d 881, 886 (Ariz. Ct. App. 2019) (citations omitted). Moreover, "where

21    there is a specific contract which governs the relationship of the parties, the doctrine of

22    unjust enrichment has no application." *Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171

23    (Ariz. 1976) (citations omitted). The existence of a contract bars tort claims when the claim

24    would not exist but for a breach of a contract. *Huffman v. JP Morgan Chase Bank, NA*, No.

25    CV-22-00903-PHX-JJT, 2024 WL 4817654, at *2–3 (D. Ariz. Nov. 18, 2024) (collecting

26    cases discussing contractual bar to unjust enrichment claims).

27          The statute of limitations for unjust enrichment claims is three years. *See* A.R.S. §

28    12-543; *Serrano v. Serrano*, No. 1 CA–CV 10–0649, 2012 WL 75639, at *7 (Ariz. Ct.

App. Jan. 10, 2012). As with Plaintiff's other common law tort claims, the cause of action accrued "when a plaintiff knows, or should with reasonable diligence know, the facts underlying the cause of the injury." *Margaritis v. BAC Home Loans Servicing LP*, No. CV 11-1741-PHX-SRB, 2012 WL 12885712, at *7 (D. Ariz. Mar. 9, 2012), *aff'd*, 579 F. App'x 574 (9th Cir. 2014).

In this case, as noted above, Plaintiff knew, or reasonably should have known, about the interest charges and fees and Defendant's alleged failure to honor the credit agreements terms more than seven years ago, well before the statute of limitations applied. Thus, these allegations must be dismissed as time-barred. Plaintiff's allegations that the December 29, 2023 transfer of Plaintiff's account to Midland unjustly enriched Defendants Comenity and Bread is based on conduct within the statute of limitations. (Doc. 32 at 15, 45). However, these allegations still fail to state a claim upon which relief may be granted, as they arise out of the existence of the credit agreement between Plaintiff and Defendant Comenity. "Every aspect of this case finds its origin in the fact that the parties' shared a contractual creditor-debtor relationship" where Plaintiff contests the terms and Defendants' performance of the credit loan agreement, and "[t]his creditor-debtor relationship was a creation of pure contract." *Huffman*, 2024 WL 4817654, at *2. The transfer of Plaintiff's account was essentially a transfer of the contractual agreement, and the essential premise of all of Plaintiff's unjust enrichment claims is that Defendant Comenity failed to perform by the alleged terms of its agreement with Plaintiff. Plaintiff's allegations are factually grounded in Comenity's failure to impose no fees or interest on his credit account as allegedly contemplated by the contract. In the absence of the parties' contractual arrangement, in which Defendant Comenity provided a credit account to Plaintiff, Comenity would not have possessed Plaintiff's credit account and would not have owed Plaintiff any alleged duty not to transfer the account. In sum, "the parties' contractual agreement forms the essential basis against which Plaintiff's claims for unjust enrichment … must be understood." *Id.* at *3. Therefore, those claims arose out of contract, and the doctrine of unjust enrichment has no application here. The Court finds that no additional

facts would salvage Plaintiff's unjust enrichment claims and that dismissal without leave to amend is warranted.

### g. Arizona Consumer Fraud Act

Against all Defendants, Plaintiff alleges a violation of the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521 et seq. (Doc. 32 at 46). Plaintiff alleges Defendants Comenity and Bread violated the act by engaging in deceptive and unfair acts and practices, including misrepresenting or failing to disclose material terms of the credit agreement; breaching the agreement through imposition of interest and fees; attempting to unilaterally modify the terms of the agreement; misrepresenting the status of the account upon Plaintiff's dispute; and reporting inaccurate information to credit bureaus. (*Id.* at 47). The ACFA prohibits

> [t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[.]

A.R.S. § 44-1522(A). The statute of limitations for an ACFA claim is one year. A.R.S. § 12-541(5). "The limitations period begins to run when 'the defrauded party discovers or with reasonable diligence could have discovered the fraud.'" *Garner v. Medicis Pharm. Corp.*, No. CV-21-00145-PHX-GMS, 2021 WL 3168452, at *2 (D. Ariz. July 27, 2021) (citation omitted.)

Many of the alleged violations pertain to conduct plainly outside of the scope of the statute. Specifically, Defendants Comenity and Bread's could not have violated the ACFA by (1) "[i]mposing unauthorized interest charges and fees"; (2) "[a]ttempting the unilaterally modify the terms of the agreement without proper notice or consent"; (3) "[m]isrepresenting the status of the account and validity of charges" upon Plaintiff's dispute; or (4) "[r]eporting inaccurate information to credit bureaus." (Doc. 32 at 47). This conduct is not in connection with the sale or advertisement of merchandise and thus is not contemplated by ACFA. The allegedly unfair and deceptive conduct that does bear upon

the sale or advertisement of the credit agreement—namely, Comenity's misrepresentation of and failure to disclosure terms of the agreement—occurred at or around the opening of Plaintiff's account in 2016. (*Id.* at 5). Thus, Plaintiff's claims are barred by the one-year statute of limitations.

Because Plaintiff could have reasonably discovered the alleged fraud upon receiving monthly billing statements starting in 2016 that outlined the inconsistencies in the agreed-upon and actual terms of the credit account, the Court is not persuaded that Defendants actively concealed their alleged deception or that Plaintiff could not have discovered the deception until recently. Thus, the Court finds that equitable tolling is inappropriate, and dismissal without leave to amend is warranted.

### h. Intentional Infliction of Emotional Distress

Lastly, Plaintiff asserts an intentional infliction of emotional distress ("IIED") claim against all Defendants. (Doc. 32 at 49). Plaintiff points to Defendant Comenity's alleged misrepresentations, imposition of interest charges and other fees, refusal to honor the credit agreement, reporting of negative information to credit bureaus, and efforts to collect payment from Plaintiff as the foundation for his claim. (*Id.* at 49–50).

To bring an IIED claim, a plaintiff must show (1) the defendant's conduct was "extreme" and "outrageous"; (2) the defendant either intended to cause emotional distress or recklessly disregarded a near certainty that distress would result from its conduct; and (3) severe emotional distress indeed occurred. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (citations omitted). "One may recover for intentional infliction of emotional distress only where the defendant's acts are 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152, 155 (Ariz. 1978) (citation omitted). The "defendant's conduct must 'fall at the very extreme edge of the spectrum of possible conduct.'" *Reynolds v. Mitchell*, No. 1 CA-CV 06-0803, 2007 WL 5463507, at *5 (Ariz. Ct. App. Dec. 27, 2007) (citation omitted).

The bar to demonstrate outrageous and atrocious conduct is quite high. *See generally Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 667 (Ariz. Ct. App. 1969) (rejecting IIED claim where insurance adjuster allegedly made false and malicious threats to cajole plaintiff into accepting settlement for son's wrongful death); *Patton*, 578 P.2d at 155 (finding that while bank's unilateral change of loan agreement, unilateral imposition of increased interest rate and fees, foreclosure of plaintiff's home without notice, and delayed refusal to return plaintiff's savings account "may have been harsh … it is still within the realm of acceptable business practice."). Arizona courts have often found that misrepresentations, breaches of contract, fraudulent inducement, or other actions like those alleged in this case do not amount to extreme and outrageous conduct. *See Gerard v. Kiewit Corp.*, No. 1 CA-CV 19-0479, 2020 WL 3422844, at *5 (Ariz. Ct. App. June 23, 2020) (alleged fraudulent misrepresentations about employment opportunity was not outrageous or extreme); *Sport Collectors Guild Inc. v. Bank of Am. NA*, No. CV-16-02229-PHX-ROS, 2018 WL 8248944, at *5 (D. Ariz. Jan. 5, 2018) (alleged breach of good faith and fair dealing with loan agreement did not constitute outrageous or extreme conduct); *Arce v. LHM Dodge Ram Avondale*, No. CV-23-02267-PHX-MTL, 2024 WL 1051988, at *4 (D. Ariz. Mar. 11, 2024) ("But standard, or even unprofessional, attempts to collect on a debt are not the sort of extreme and outrageous conduct that can sustain a claim for intentional infliction of emotional distress."); *Jaffe v. Cap. One Bank, N.A.*, No. 1 CA-CV 13-0600, 2014 WL 2917083, at *3 (Ariz. Ct. App. June 26, 2014) (repeatedly sending billing statements and suing to recover delinquent credit card debt plaintiff allegedly did not owe did not constitute outrageous conduct).

Additionally, Arizona "courts have also uniformly insisted that the emotional distress suffered be *severe*." *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 501 (Ariz. Ct. App. 1982); *Sport Collectors Guild Inc.*, 2018 WL 8248944, at *5 (rejecting IIED claim when Plaintiff cited "no specific examples of any emotional distress suffered, such as hospitalizations [or] medical treatment rendered" beyond general claims of humiliation, grief, and anxiety). In providing examples for what evidence constitutes a showing of

severe emotional distress, one Arizona court, collecting cases, cited plaintiffs suffering a heart attack; entering premature labor and having a stillbirth; experiencing a state of extreme shock and hysteria such that plaintiff could not perform her job; and requiring hospitalization. *Midas*, 650 P.2d at 501 (collecting cases).

As a threshold matter, Defendants Comenity and Bread argue that Plaintiff's IIED claim is barred by the statute of limitations. (Doc. 37 at 14). In Arizona, IIED claims have a two-year statute of limitations. *Walker v. Botezatu*, No. CV-15-08288-PCT-JZB, 2016 WL 1625733, at *2 (D. Ariz. Apr. 25, 2016). Plaintiff alleges that because Defendants' conduct was continuous and his emotional distress is cumulative, the statute of limitations should be tolled. (Doc. 32 at 51). Under the continuing violation doctrine, when a long series of closely-related cumulative acts—any of which likely was insufficient by itself to support the claim—form the basis of liability, the "limitations period on such a claim does not begin to run until the alleged tortious acts have ceased." *Watkins v. Arpaio*, 367 P.3d 72, 75–76 (Ariz. Ct. App. 2016). Some courts have found that the continuing violation doctrine is not applicable to IIED claims in Arizona. *London-Marable v. Boeing Co.*, No. CV-04-2611-PHX-MHM, 2008 WL 2559404, at *6 (D. Ariz. June 23, 2008), *aff'd*, 357 F. App'x 61 (9th Cir. 2009) ("Extreme and outrageous acts comprising a claim for IIED have been held to constitute separate and distinct torts, and *not* a continuing violation.").

Here, the Court is unconvinced the continuing violation doctrine is appropriate. First, it is unclear whether the doctrine applies to IIED claims under Arizona law. *See id.* Indeed, the fact that the continuing violation doctrine requires a series of closely related acts that are insufficient alone to support the underlying tort claim demonstrates its incongruence with IIED claims, which require an act to meet the difficult bar of extreme, outrageous, and atrocious behavior. *Franklin v. City of Phoenix*, No. CV-06-02316-PHX-NVW, 2007 WL 1463753, at *2 (D. Ariz. May 17, 2007) (finding continuing violation doctrine inappropriate for IIED claims because each instance of extreme and outrageous conduct causes a single set of damages).

Second, even if the doctrine is applicable to IIED claims, the circumstances in this

case do not show that its application is warranted. The "continuing violations doctrine was not designed to extend the statute of limitations in cases involving discrete unlawful acts or continuing ill effects from an injury occurring outside the limitations period." *Foor v. City of Phoenix*, No. CV-16-01895-PHX-GMS, 2016 WL 3931844, at *3 (D. Ariz. July 21, 2016) (citations and quotations omitted) (rejecting continuing violation doctrine based on series of wrongful acts when plaintiff had reason to know of her injuries at time of the acts). As noted several times throughout this Order, Plaintiff was aware—or reasonably should have been aware—of Comenity's alleged misrepresentations, imposition of unauthorized fees and interest, breach of contract, reporting to credit bureaus, and debt collection attempts as they occurred or shortly thereafter, and certainly years before he brought this lawsuit. Moreover, Comenity's actions do not demonstrate a continuing pattern of closely-related tortious acts. As such, Plaintiff's IIED claims relating to Comenity's conduct before April 2, 2022 are time barred.

Even if the continuing violation doctrine was applicable to Plaintiff's claims, and to the extent Plaintiff's claim is based on Comenity's conduct within the statute of limitations period, he still has not sufficiently alleged the elements of IIED claim. Defendant Comenity's conduct was not "at the very extreme edge of the spectrum of possible conduct," nor was it "beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Reynolds*, 2007 WL 5463507, at *5; *Patton*, 578 P.2d at 155. Indeed, as discussed above, several Arizona courts have held that conduct similar to Comenity's—such as its alleged deliberate misrepresentations, false promises, unauthorized imposition of fees and increased interest rates, and persistent debt collection tactics—does not meet the high bar of extremely outrageous conduct.

To that end, the FAC does not provide that Defendants intended to cause or acted with reckless disregard for the near certainty of severe emotional distress. Plaintiff does not allege facts showing Defendants' state of mind beyond merely reciting Defendants' alleged wrongful conduct (Doc. 32 at 49), and the Court does not find that a near certainty of severe emotional distress was present, considering the absence of extreme and

outrageous conduct. Lastly, Plaintiff fails to sufficiently meet the severity element. While Plaintiff alleges that that he experienced anxiety, stress, sleeplessness, and a few physical manifestations of "headaches, digestive issues, and exacerbation of existing health conditions," (*Id.* at 50–51), these symptoms of distress do not amount to the level of severity contemplated by Arizona case law. Plaintiff did not provide specific examples of severe distress, such as hospitalizations or medical treatment. *See Sports Collectors Guild Incorporated*, 2018 WL 8248944, at *5. "It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people." *Midas*, 650 P.2d at 501 (quoting Restatement (Second) of Torts § 46 Comment j (1965)). In sum, while some of Comenity's behavior may have upset Plaintiff or may have indeed been unfair, it did not amount to intentional infliction of emotional distress. The Court finds dismissal of Plaintiff's IIED claim is warranted.

## IV.    CONCLUSION

All told, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A district court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

While Plaintiff only needs to allege enough facts to "plausibly give rise to an entitlement to relief," that has not occurred here. *Iqbal*, 556 U.S. at 679. Specifically, most of Plaintiff's claims were brought after the time limits imposed by their respective statutes of limitations. These claims are barred as a matter of law and thus leave to amend would be futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). While Plaintiff's claims for FCRA violations, unjust enrichment, and IIED involve conduct not subject to the statute of limitations, the Court finds that Plaintiff failed to allege facts sufficient to state claims

upon which relief may be granted. To that end, taking the facts included and attached to Plaintiff's FAC as true and considering Plaintiff's reiteration of those facts and his arguments in his briefing, the Court finds that the allegation of additional relevant facts consistent with the FAC could not save Plaintiff's claims. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."). Therefore, the claims against Defendants Comenity and Bread fail to satisfy the pleading standards set forth by Rule 8 and 12(b)(6), and its dismissal is both warranted and necessary.

Accordingly,

**IT IS ORDERED** that Defendant Comenity Capital Bank's Motion to Dismiss (Doc. 36) is **granted**. All claims by Plaintiff Daniel D'Agostino in his First Amended Complaint against Defendant Comenity are **dismissed with prejudice** and **without leave to amend.**

**IT IS FURTHER ORDERED** Defendant Bread Financial Payments Incorporated's Motion to Dismiss (Doc. 38) is **granted.** All claims by Plaintiff Daniel D'Agostino in his First Amended Complaint against Defendant Bread are **dismissed with prejudice** and **without leave to amend.**

Dated this 20th day of December, 2024.


Honorable Steven P. Logan
United States District Judge