1    **WO**

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8    Daniel D'Agostino,                    )    No.  CV-24-00728-PHX-SPL
                                           )
9                                          )
                        Plaintiff,         )    **ORDER**
10   vs.                                   )
                                           )
11                                         )
     Comenity Capital Bank, et al.,        )
12                                         )
                                           )
13                      Defendants.        )
                                           )
14   _____     )

15          Before the Court is Defendants Midland Credit Management Incorporated and

16   Encore Capital Group Incorporated's ("Defendants") Motion to Dismiss (Doc. 40),

17   Plaintiff Daniel D'Agostino's Response (Doc. 56), and Defendants' Reply (Doc. 60). The

18   Court now rules as follows.

19   **I.      BACKGROUND**

20          Plaintiff Daniel D'Agostino ("Plaintiff"), appearing pro se, brings suit against

21   Defendants Comenity Capital Bank ("Comenity"); Comenity's parent company, Bread

22   Financial Payments, Inc. ("Bread"); Midland Credit Management, Inc. ("Midland"); and

23   Midland's parent company, Encore Capital Group, Inc. ("Encore"), alleging various

24   violations of state and federal law. (Doc. 32 at 4–5). This case arises out of a dispute

25   regarding a credit card account Plaintiff opened with Defendant Comenity on July 13,

26   2016. (*Id.* at 5).

27          Plaintiff alleges that he opened the credit card account over a phone call with a

28   Defendant Comenity representative, in which the representative told Plaintiff the account

1    would have a zero-percent interest rate for the life of the loan and no additional fees beyond

2    the principal amount borrowed. (*Id*.). Plaintiff alleges that the representative did not

3    mention any written terms and conditions associated with the account. (*Id*.). That same

4    day, Plaintiff used the credit account to purchase dental services totaling $697.50. (*Id*. at

5    6). Defendant Comenity later sent a written agreement outlining the accounts terms and

6    conditions to Plaintiff, which Plaintiff did not see prior to the account's opening and initial

7    use. (*Id*.). Plaintiff alleges that the verbal, not written, agreement controls in this case. (*Id*.

8    at 9). Plaintiff subsequently began making regular payments on the credit card account, but

9    noticed nearly a year later, in July 2017, "unauthorized charges and interest appearing on

10   his account statements." (Doc. 32 at 10).

11           Plaintiff alleges that he promptly contacted Defendant Comenity to dispute the

12   interest charges and fees, but that despite discussing his concerns with multiple company

13   representatives, "Comenity failed to provide a satisfactory explanation for the unauthorized

14   charges and interest and refused to make any corrections." (*Id.* at 11). On December 1,

15   2021, Plaintiff requested a full record of his account transactions, but Defendant Comenity

16   allegedly failed to provide a complete record or to address the disputed charges and interest

17   in its response on December 10, 2021. (*Id*. at 12). Plaintiff also alleges that Comenity

18   reported negative information about Plaintiff's account to credit bureaus, which resulted in

19   delinquencies appearing on his credit reports from July 2021 through December 2023. (*Id*.

20   at 14). On May 2, 2023, Plaintiff mailed Defendant Comenity a letter detailing the history

21   of the dispute, demanding a refund of all payments made other than the initial $697.50, and

22   requesting Comenity to remove related negative items from his credit report, to which

23   Comenity allegedly failed to respond. (*Id*. at 13–14). On December 29, 2023, Defendant

24   Comenity closed Plaintiff's account and transferred it to Defendant Midland. (Doc. 32 at

25   15). Plaintiff alleges that Defendant Midland undertook "aggressive collection efforts,

26   including threats of legal action" following the acquisition of his account throughout March

27   2024. (*Id*.). Plaintiff specifically alleges that Defendant Midland sent a collection letter on

28   an unspecified date stating that it was considering forward the account to an attorney and

1     made two phone calls to Plaintiff on March 4 and 19, 2024, on which Defendant Midland

2     representatives threatened legal action. (*Id.* at 15–17).

3          On April 2, 2024, Plaintiff filed his pro se Complaint. (Doc. 1). Plaintiff filed his

4     FAC on July 9, 2024. (Doc. 32). Plaintiff brings numerous claims alleging federal and state

5     statutory violations and common law contract and tort injuries. (Doc. 32). Additionally,

6     Plaintiff seeks to bring these claims on behalf of a potential putative class. (*Id.* at 19).

7     **II.     LEGAL STANDARD**

8          "To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must

9     meet the requirements of Rule 8." *Jones v. Mohave Cnty.*, No. CV 11-8093-PCT-JAT,

10    2012 WL 79882, at \*1 (D. Ariz. Jan. 11, 2012); *see also Int'l Energy Ventures Mgmt.,*

11    *L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016) (Rule 12(b)(6)

12    provides "the one and only method for testing" whether pleading standards set by Rule 8

13    and 9 have been met); *Hefferman v. Bass*, 467 F.3d 596, 599–600 (7th Cir. 2006) (Rule

14    12(b)(6) "does not stand alone," but implicates Rules 8 and 9). Rule 8(a)(2) requires that a

15    pleading contain "a short and plain statement of the claim showing that the pleader is

16    entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for failure to

17    state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or

18    (2) insufficient facts alleged under a cognizable legal theory. *In re Sorrento Therapeutics,*

19    *Inc. Sec. Lit.*, 97 F.4th 634, 641 (9th Cir. 2024) (citation omitted). A claim is facially

20    plausible when it contains "factual content that allows the court to draw the reasonable

21    inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

22    Factual allegations in the complaint should be assumed true, and a court should then

23    "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. Facts

24    should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT*

25    *Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not

26    have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL

27    79882, at \*1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

28         Rule 12(f) provides the Court with authority to "strike from a pleading . . . any

1    redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Although

2    generally disfavored, a motion to strike may be granted where necessary to spare the parties

3    the time and expense associated with 'litigating spurious issues.'" *Cheatham v. ADT Corp.*,

4    161 F. Supp. 3d 815, 833–34 (D. Ariz. 2016) (quoting *Sidney–Vinstein v. A.H. Robins Co.*,

5    697 F.2d 880, 885 (9th Cir. 1983)). "A successful motion to strike must show that the law

6    is clear beyond reasonable dispute and that the relevant claim or defense could not succeed

7    under any set of circumstances." *Id.* at 834 (citing *Sanders v. Apple, Inc.*, 672 F. Supp. 2d

8    978, 990 (N.D. Cal. 2009)). "The motion to strike 'was never intended to furnish an

9    opportunity for the determination of disputed and substantial questions of law.'" *Id.*

10   (quoting *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984)). "Moreover,

11   even a purely legal question will not be decided on a motion to strike if discovery might

12   provide useful context for decision or render the question moot." *Id.* (citations omitted).

13   As with motions to dismiss under Rule 12(b)(6), "Rule 12(f) requires the Court to accept

14   the non-moving party's well-pleaded facts as true and to draw all reasonable inferences in

15   favor of that party." *Id.* (citing *Farm Credit Bank of Spokane v. Parsons*, 758 F. Supp.

16   1368, 1371 n. 4 (D. Mont. 1990)).

17   **III.    DISCUSSION**

18        Defendants Midland and Encore argue that Plaintiff's claims against them included

19   in the FAC should be dismissed as they (1) fail to state claims upon which relief may be

20   granted and (2) fail to demonstrate that Defendant Encore is liable for any acts of its

21   subsidiary, Midland. (Doc. 40 at 2). Additionally, Defendants request the Court strike

22   Plaintiff's putative class claims, as pro se litigants cannot represent third parties or

23   prosecute the claims in a class action. (*Id.* at 3).

24        **a.  Liability of Defendant Encore**

25        As a threshold matter, the Court finds that Plaintiff's claims against Defendant

26   Encore must be dismissed. Generally, a parent company may only be held liable for the

27   actions of its subsidiary if a plaintiff shows a high degree of control by the parent over the

28   subsidiary, which may be demonstrated through either the alter-ego or instrumentality

4

1  doctrines. *Midtown Hotel Grp. LLC v. Selective Ins. Co. of Am.*, No. CV-22-01395-PHX-

2  JAT, 2023 WL 3603677, at *4 (D. Ariz. May 23, 2023); *Harris Rutsky & Co. Ins. Servs.*

3  *v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). Plaintiff's FAC provides no

4  facts that Defendant Encore or its representatives were involved in any way with the alleged

5  conduct in this case beyond the conclusory allegation that it "is responsible for the policies

6  and practices of" Defendant Midland. (Doc. 32 at 5). The operative complaint does not

7  purport that there is such a unity of interest and ownership that the separate personalities

8  of the two entities no longer exist, as required under the alter ego exception. *Harris Rutsky*,

9  328 F.3d at 1134. Nor does the FAC purport that liability is warranted under any other

10  theory of corporate veil-piercing or that Defendant Encore is directly liable—the FAC

11  provides no facts at all about the relationship between Defendants Midland and Encore,

12  Defendant Encore's conduct, or any other information relevant to Defendant Encore's

13  alleged liability. As such, Plaintiff has not alleged facts sufficient to establish that

14  Defendant Midland's conduct is attributable to Defendant Encore, and the Court finds

15  dismissal of Plaintiff's claims against Defendant Encore is appropriate. However, as

16  additional facts may exist that would remedy Plaintiff's claims, the Court finds that leave

17  to amend is appropriate.

18  **b.  Motion to Dismiss**

19  **i.  Fair Debt Collection Practices Act**

20  Plaintiff alleges Defendants Midland and Encore violated various portions of the

21  Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, ("FDCPA"). A plaintiff must

22  show four elements to bring a successful FDCPA claim: (1) the plaintiff qualifies as a

23  consumer under the act; (2) the debt arises out of a transaction entered into for personal,

24  family, or household purposes; (3) the defendant is a debt collector under the act; and (4)

25  "the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a–1692o."

26  *Wheeler v. Premiere Credit of N. Am., LLC,* 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015).

27  The parties do not dispute that the first three elements are satisfied in this case, and instead

28  primarily dispute whether Defendants violated 1692d–1692g, as alleged by Plaintiff.

1    (Docs. 40 at 8; 32 at 35). However, as a threshold issue, the Court finds that Plaintiff has

2    not alleged facts that, taken as true, show that Defendants are debt collectors as defined by

3    the act. Section 1692a(6) provides that

> The term "debt collector" means any person who uses any
> instrumentality of interstate commerce or the mails in any
> business the principal purpose of which is the collection of any
> debts, or who regularly collects or attempts to collect, directly
> or indirectly, debts owed or due or asserted to be owed or due
> *another*.

8    15 U.S.C. § 1692a(6) (emphasis added). Courts have interpreted this definition as

9    providing two prongs for designation as a "debt collector": (1) the principal purpose prong,

10   which covers "those engaged in 'any business the principal purpose of which is the

11   collection of any debts,'" and (2) the regularly collects prong, which applies to "those 'who

12   regularly collect[] … debts owed or due another.'" *McAdory v. M.N.S. & Assocs., LLC*,

13   952 F.3d 1089, 1092 (9th Cir. 2020) (quoting 15 U.S.C. § 1692a). Under the first prong,

14   the Ninth Circuit has held that qualification as a debt collector is warranted if the Court

15   determines that debt collection is a "business's dominant, or principal, objective" rather

16   than just incidental to a business's objectives. *Id.* at 1093. Under the second prong, the

17   Supreme Court has noted that "by its plain terms this language seems to focus our attention

18   on third party collection agents working for a debt owner—not on a debt owner seeking to

19   collect debts for itself." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017).

20   "Neither does this language appear to suggest that we should care how a debt owner came

21   to be a debt owner—whether the owner originated the debt or came by it only through a

22   later purchase." *Id.* Thus, under the "regularly collects" prong of 1692a(6), a party cannot

23   be liable under the FDCPA for its collection conduct related to a debt it seeks to collect for

24   itself.

25        Plaintiff's operative complaint does not submit an argument that Defendants qualify

26   as debt collectors under the principal purpose prong. Instead, Plaintiff alleges that

27   Defendants are debt collectors under the second prong of this definition: because "they

28   regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted

to be owed or due to another." (Doc. 32 at 34). In this case, Midland is the debt owner and seeks to collect the debt from Plaintiff for itself. (*See id*. at 15). As such, Defendants do not qualify as debt collectors under the second regularly collects prong. While Plaintiff's FAC quotes a Midland representative referring to Midland as a debt collection agency (*id.*), "Plaintiff's FAC is devoid of any allegations that indicate Defendant primarily engages in debt collection, or debt collection is the 'principal purpose' of the business" as opposed to incidental to its business objectives. *Smith v. Credit Corp Sols., Inc*., No. 320CV01295JAHRBB, 2022 WL 959597, at \*5 (S.D. Cal. Mar. 30, 2022). To that end, Plaintiff does not sufficiently allege that Defendants qualify as debt collectors within the meaning of the FDCPA and therefore fails to state a claim under the statute. However, as discussed below, even if Defendants qualify as debt collectors under the statute, the majority of Plaintiff's FDCPA claims are still deficient.

### 1.  § 1692d

Plaintiff alleges Defendants harassed, oppressed, or abused Plaintiff in connection with debt collection in violation of § 1692d. (*Id.*). Section 1692d sets forth six non-exclusive circumstances that constitute harassing or abusive conduct: (1) using or threatening to use violence or other criminal means to harm the physical person, reputation, or property of any person; (2) using obscene or profane language that would abuse the hearer or reader; (3) publishing of a list of consumers who allegedly refused to pay debts; (4) advertising sale of a debt to coerce payment of the debt; (5) repeatedly or continuously calling any person "with intent to annoy, abuse, or harass"; or (6) placing telephone calls without disclosing the caller's identity. 15 U.S.C. § 1692d(1)–(6). Plaintiff does not allege that Defendants used or threatened violence or criminal means to harm him; used obscene or profane language; published his name on any list; advertised sale of his debt; or called without disclosing their identity. The only alleged conduct that is remotely contemplated by § 1692d is Defendant Midland's alleged phone calls, which are not alleged to be continuous or abusive in nature. (Doc. 32 at 17). Plaintiff alleges that Defendant Midland merely sent Plaintiff a collection letter and then made two phone calls on March 4, 2024,

1   and March 19, 2024, during which Midland representatives tried to come to an agreement

2   with Plaintiff and communicated that they may pursue legal action otherwise. (*Id.* at 15–

3   17). The Court finds that a single letter and two phone calls "does not rise to the level of

4   threats and intimidations exemplified in Section 1692d." *Bellini v. Patenaude & Felix APC*,

5   No. CV-22-02188-PHX-DJH, 2023 WL 6248577, at *8 (D. Ariz. Sept. 26, 2023); *see also*

6   *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1227–28 (E.D. Cal. 2010)

7   (collecting cases). Thus, Plaintiff fails to state a claim under Section 1692d upon which

8   relief may be granted.

9                              **2.  § 1692e**

10      Section 1692e prohibits "any false, deceptive, or misleading representation or

11  means in connection with the collection of any debt" and provides a non-exhaustive list of

12  specific violating conduct. 15 U.S.C. § 1692e. Plaintiff alleges that Defendants violated §

13  1692e(2)(A) by "[f]alsely representing the character, amount, or legal status of the debt";

14  § 1692e(5) by "[t]hreatening to take legal action that was not actually intended to be taken";

15  and § 1692e(10) by "[u]sing false representations or deceptive means to collect or attempt

16  to collect the debt." (Doc. 32 at 35).

17      In evaluating whether a representation was false under section 1692, the Ninth

18  Circuit applies the "least sophisticated debtor" standard, which finds that a debt collector

19  has violated the act through false, deceptive, or misleading representations where the least

20  sophisticated debtor would likely be misled. *Swanson v. S. Oregon Credit Serv., Inc.*, 869

21  F.2d 1222, 1225 (9th Cir. 1988). A communication is deceptive where it can be reasonably

22  understood "to have two or more different meanings, one of which is inaccurate." *Gonzales*

23  *v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) (citation omitted). The

24  allegations in this case do not implicate the kind of deceptive and misleading conduct

25  contemplated in other section 1692e cases. *Compare Bazan v. Hammerman & Hultgren*

26  *PC*, No. CV-20-01138-PHX-DLR, 2020 WL 5439517, at *1 (D. Ariz. Sept. 10, 2020)

27  (violation where letter described confusing calculation of debt, accrued interest, and

28  continuing interest rate that could reasonably convey three different balance figures) *with*

1    *Youssofi v. Cmre Fin. Servs., Inc.*, No. 15CV2310 JM(WVG), 2016 WL 245849, at *3

2    (S.D. Cal. Jan. 21, 2016) (no violation where defendant sought to collect an incorrect

3    amount lower than the debt owed and there was no evidence of subterfuge, abuse,

4    unfairness, or unconscionability). For instance, the Ninth Circuit stated in *Donohue v.*

5    *Quick Collect, Inc*. that "[i]n assessing FDCPA liability, we are not concerned with mere

6    technical falsehoods that mislead no one, but instead with genuinely misleading statements

7    that may frustrate a consumer's ability to intelligently choose his or her response." *See*

8    *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010). In that case, the court

9    found that a falsehood in a debt collector's communication "did not undermine [the

10   plaintiff's] ability to intelligently choose her action concerning her debt." *Id.* Indeed, the

11   court ultimately found that liability was not triggered under sections 1692e or 1692f,

12   because the plaintiff could have challenged the accuracy or legality of the debt, settled the

13   debt, or taken other action based on the information contained in the communication. *Id.*

14       Here, Plaintiff was not at risk of being misled by the amount or character of the debt

15   allegedly communicated by Defendant Midland under the least sophisticated debtor

16   standard. As noted in Plaintiff's FAC, Defendant Comenity communicated the status and

17   amount of the debt to Plaintiff when it transferred the account to Defendant Midland. (Doc.

18   32 at 15). Plaintiff was well aware of the source and amount of the alleged debt. Defendant

19   Midland's communications about the debt were not deceptive as to mislead an

20   unsophisticated consumer. Rather, an unsophisticated consumer in Plaintiff's position

21   would understand exactly what Defendant Midland was referring to in its communications.

22   Defendant Midland's communication did not undermine Plaintiff's ability to intelligently

23   choose his action concerning his debt, such as determining whether to challenge its

24   accuracy or legality or otherwise come to an agreement to pay the alleged amount owed.

25   Plaintiff fails to identify how Defendant Midland's practices are otherwise unfair or

26   unconscionable. Thus, Plaintiff's claims under sections 1692e(2)(A) and 1692e(10) are

27   insufficient, and dismissal is warranted.

28       Further, Plaintiff's allegation that Defendants violated section 1692e(5) by

1
2
3
4
5
6
7
8
9
10
11

"[t]hreatening to take legal action that was not actually intended to be taken" fails to state a claim. (Doc. 32 at 35). Plaintiff sufficiently alleges that Defendant Midland threatened or impliedly threatened litigation. *Zilbert v. Credit Corp. Sols.*, No. CV 17-02617-JAK-SK, 2017 WL 8236354, at *4 (C.D. Cal. Dec. 13, 2017) ("[S]everal district courts within the Ninth Circuit have determined that 'vague threats of "other remedies" or "further steps" ... constitute an implied threat of legal action to the least sophisticated debtor.'") (citations omitted). However, the FAC fails to allege facts sufficient to show that Defendant Midland would not have brought a civil action against Plaintiff to seek to recover the amount allegedly due, and instead "makes the conclusory allegation that Defendant did not intend to take such legal action." *Id.* Thus, Plaintiff fails to meet the pleading standard for his section 1692e(5) claim.

12

### 3.  § 1692f

13
14
15
16
17
18
19
20
21
22
23
24
25

Plaintiff alleges that Defendants violated 1692f(1), which prohibits collection or attempted collection by using unfair or unconscionable means, by attempting to collect an amount unauthorized by the agreement creating the debt. (Doc. 32 at 35–36); 15 U.S.C. § 1692f(1). The Court presumes that Plaintiff's allegations refer to Plaintiff's alleged oral agreement with Defendant Comenity, which Plaintiff claims included an agreement that the credit account would have zero interest for the life of the loan and no additional fees. (Doc. 32 at 5). While Plaintiff's FAC shows that Plaintiff was on notice of the interest and fees as early as December 2016 (Doc. 32-1 at 513) and Plaintiff apparently acknowledges the dubious nature of a business model that offers zero-percent interest loans (Doc. 56 at 3), at the motion to dismiss stage, the Court must accept all factual assertions as true. As such, the Court finds that Plaintiff's section 1692f(1) claim may proceed should Plaintiff establish that Defendant Midland is a "debt collector" as defined by the statute upon amendment.

26

### 4.  § 1692g

27
28

Under Section 1692g(a), a debt collector must provide a proper validation notice within five days of sending a plaintiff an initial communication. 15 U.S.C. § 1692g(a). In

1   the Ninth Circuit, this statute requires only that the debt collector *sent* a written notice, not
2   that the debtor actually received the notice. *Mahon v. Credit Bureau of Placer Cnty. Inc.*,
3   171 F.3d 1197, 1201 (9th Cir. 1999), *as amended on denial of reh'g and reh'g en banc*
4   (Apr. 28, 1999). Plaintiff's allegations do not specify the date of the initial communication,
5   which is necessary for this Court to determine if and when the five-day notice timeline was
6   triggered. (Doc. 32 at 35). Instead, Plaintiff argues in his Response that "this information
7   is within Defendants' possession and can be easily obtained through discovery." (Doc. 56
8   at 5). As Plaintiff received and is in possession of the collection letter that purportedly
9   serves as the initial communication, Plaintiff ought to possess information regarding the
10  date of the communication, as well. (Docs. 32-1 at 616; 32 at 15). Furthermore, Plaintiff
11  does not allege that Defendant Midland never sent a written notice: Plaintiff's allegation
12  states that Defendants failed to *provide* him with a notice. (Doc. 32 at 35). As noted, in the
13  Ninth Circuit, a debtor's receipt of the notice is not required. *Mahon*, 171 F.3d at 1201.
14  Without more information, Plaintiff's FAC fails to include the factual contentions
15  necessary to establish a claim under 1692g(a). However, as additional facts may exist to
16  cure the identified deficiencies, Plaintiff may move for leave to amend on his section
17  1692g(a) claim.

18      Under section 1692g(b), "when a consumer disputes a debt in writing and requests
19  verification of the debt, the debt collector must place an immediate hold on all collection
20  efforts pending verification of the debt." *Simington v. Clark Cnty. Collection Serv.*, No.
21  CV-10-8236-PCT-FJM, 2012 WL 1157077, at *2 (D. Ariz. Apr. 6, 2012). An oral notice
22  of a dispute fails to satisfy the statute. *Id.* In this case, although Plaintiff alleges that
23  Defendants continued collection efforts "without properly validating the debt after
24  receiving Plaintiff's timely written dispute and request for verification" (Doc. 32 at 35),
25  Plaintiff fails to allege that he ever submitted a written dispute or verification request and
26  failed to address Defendants' argument that such written dispute notice or request was ever
27  received in his Response. (Docs. 40 at 9–10; 56 at 5). The Court therefore accepts this
28  argument as conceded. *See, e.g., M.S. v. Cnty. of Ventura*, No. CV 16-03084-BRO (RAOx),

2017 WL 10434015, at *24 n.20 (C.D. Cal. Mar. 7, 2017) ("Failure to respond to the merits of one party's argument constitutes a concession of that argument."); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot 'manufacture arguments for [a party]' . . . ."). Thus, the Court finds that dismissal of Plaintiff's section 1692g(b) claim is warranted and leave to amend would be futile.

### ii.  Unjust Enrichment

In Arizona, "[u]njust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010) (citations and quotations omitted.). "To prevail on an unjust enrichment claim, a plaintiff must prove: '(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy.'" *Serrano v. Serrano*, No. 1 CA-CV 10-0649, 2012 WL 75639, at *7 (citing *Trustmark Ins. Co. v. Bank One, Ariz. N.A.*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002)). A plaintiff must show that the defendant retained a benefit at the plaintiff's expense and that it would be unjust for the defendant to retain the benefit without compensating the plaintiff. *Span v. Maricopa Cnty. Treasurer*, 437 P.3d 881, 886 (Ariz. Ct. App. 2019) (citations omitted). Moreover, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) (citations omitted). The existence of a contract bars tort claims when the claim would not exist but for a breach of a contract. *Huffman v. JP Morgan Chase Bank, NA*, No. CV-22-00903-PHX-JJT, 2024 WL 4817654, at *2–3 (D. Ariz. Nov. 18, 2024) (collecting cases discussing contractual bar to unjust enrichment claims).

Plaintiff alleges that Defendants were unjustly enriched by (1) acquiring Plaintiff's account at a discount based on its disputed status and (2) attempting to collect the full amount of the disputed debt. (Doc. 32 at 45). Plaintiff alleges that he has been impoverished

1    by (1) paying amounts exceeding his original verbal agreement with Defendant Comenity;

2    (2) suffering damage to his credit score and status; and (3) incurring expenses in attempting

3    to resolve his account issues. (*Id.*). These allegations fail to state a claim for unjust

4    enrichment. With respect to Plaintiff's claim that Defendants were unjustly enriched by

5    acquiring Plaintiff's account at a discount, Defendant Midland obtained the account from

6    Defendant Comenity, and Plaintiff fails to allege that he suffered a related impoverishment

7    from the switch in ownership over his debt account. The requisite impoverishment and

8    connection between the impoverishment and benefit are not present here. Moreover, to the

9    extent Plaintiff alleges that Defendants were unjustly enriched by "attempting to collect

10   the full amount of the disputed debt" (Doc. 32 at 45), the Court cannot fathom how a party's

11   attempt to collect debt equates to a benefit conferred on that party. Plaintiff fails to

12   demonstrate a connection between this "benefit" and his alleged impoverishments, as well.

13          Beyond these allegations, the Court identifies from the FAC that the only benefit or

14   enrichment Defendant Midland received and the only connected impoverishment to

15   Plaintiff was Plaintiff's $348 payment to Defendant Midland made on March 19, 2024.

16   (Doc. 32 at 17). However, Exhibit K attached to Plaintiff's FAC reveals that this payment

17   was made pursuant to an agreement made between Plaintiff and Defendant Midland to

18   establish a payment plan. (Doc. 32-1 at 1279). Exhibit K further shows that Plaintiff has

19   continued to make the agreed-upon payments following the commencement of this lawsuit.

20   (*Id.* at 1290; 1295). Any allegation that Defendant Midland wrongly received Plaintiff's

21   payments of amounts exceeding his original verbal agreement cannot be remedied by an

22   unjust enrichment claim, as such a dispute would directly relate to Plaintiff's payment

23   agreement with Defendant Midland, acknowledged in Exhibit K, or would otherwise arise

24   out of Plaintiff's contract with Defendant Comenity. Because Plaintiff's contractual

25   agreements with Defendants Midland and Comenity "form[] the essential basis against

26   which Plaintiff's claims for unjust enrichment . . . must be understood," his claims arise

27   out of contract and the doctrine of unjust enrichment has no application here. *Huffman*,

28   2024 WL 4817654, at *3. In sum, Plaintiff fails to submit a claim for unjust enrichment

upon which relief may be granted against Defendants Midland and Encore.

### iii.  Arizona Consumer Fraud Act

Against all Defendants, Plaintiff alleges a violation of the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521 et seq. (Doc. 32 at 46). Plaintiff alleges Defendants Midland and Encore violated the act by (1) "attempting to collect a debt without verifying its validity or accuracy"; (2) "misrepresenting the amount and legal status of the alleged debt"; (3) "employing unfair and deceptive tactics in their collection efforts"; and (4) "failing to properly investigate and respond to Plaintiff's disputes about the debt." (*Id.* at 47–48). The ACFA prohibits

> [t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[.]

A.R.S. § 44-1522(A). Under the ACFA, the elements of a private cause of action are (1) a false promise or misrepresentation, (2) made in connection with the sale or advertisement of merchandise, and (3) the plaintiff's consequent and proximate injury from relying on the misrepresentation, although the reliance need not be reasonable. *Naiman v. Alle Processing Corp.*, 706 F. Supp. 3d 892, 900 (D. Ariz. 2020) (citations omitted).

Plaintiff's FAC alleges no facts that establish a private right of action under the ACFA. Defendants Midland and Encore purchased Plaintiff's alleged debt from Defendant Comenity. (Doc. 32 at 15). Plaintiff does not claim that Defendants Midland or Encore sold or advertised any merchandise, made any sort of related false promise or misrepresentation, or that Plaintiff relied on such a false promise or misrepresentation. Defendants' alleged conduct—none of which is related to any sale or advertisement of merchandise—is plainly outside of the scope of the statute. Thus, Plaintiff's ACFA claim against Defendants Midland and Encore must be dismissed, and the Court finds that amendment would be futile.

///

### iv.  Intentional Infliction of Emotional Distress

Plaintiff brings a claim of intentional infliction of emotional distress ("IIED") against that Defendants Midland and Encore, resulting from their collection efforts, which included threats of legal action and "misrepresentation of the debt's status and amount" despite being informed of Plaintiff's dispute of the debt. (Doc. 32 at 50).

To bring an IIED claim, a plaintiff must show (1) the defendant's conduct was "extreme" and "outrageous"; (2) the defendant either intended to cause emotional distress or recklessly disregarded a near certainty that distress would result from its conduct; and (3) severe emotional distress indeed occurred. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (citations omitted). "One may recover for intentional infliction of emotional distress only where the defendant's acts are 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152, 155 (Ariz. 1978) (citation omitted). The "defendant's conduct must 'fall at the very extreme edge of the spectrum of possible conduct.'" *Reynolds v. Mitchell*, No. 1 CA-CV 06-0803, 2007 WL 5463507, at *5 (Ariz. Ct. App. Dec. 27, 2007) (citation omitted).

The bar to demonstrate outrageous and extreme conduct is quite high. *See generally Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 667 (Ariz. Ct. App. 1969) (rejecting IIED claim where insurance adjuster allegedly made false and malicious threats to cajole plaintiff into accepting settlement for son's wrongful death); *Patton*, 578 P.2d at 155 (finding that while bank's unilateral change of loan agreement, unilateral imposition of increased interest rate and fees, foreclosure of plaintiff's home without notice, and delayed refusal to return plaintiff's savings account "may have been harsh … it is still within the realm of acceptable business practice."). Arizona courts have often found that debt collection tactics like those alleged in this case do not amount to extreme and outrageous conduct. *See Arce v. LHM Dodge Ram Avondale*, No. CV-23-02267-PHX-MTL, 2024 WL 1051988, at *4 (D. Ariz. Mar. 11, 2024) ("But standard, or even unprofessional, attempts to collect on a debt are not

1 the sort of extreme and outrageous conduct that can sustain a claim for intentional infliction

2 of emotional distress."); *Jaffe v. Cap. One Bank, N.A.*, No. 1 CA-CV 13-0600, 2014 WL

3 2917083, at *3 (Ariz. Ct. App. June 26, 2014) (repeatedly sending billing statements and

4 suing to recover delinquent credit card debt plaintiff allegedly did not owe did not

5 constitute outrageous conduct); *Helfond v. Stamper*, 716 P.2d 70, 72 (Ariz. Ct. App. 1986)

6 (finding threat of legal action to recover medical insurance debt was not sufficiently

7 extreme and outrageous). "[C]ourts have uniformly insisted that the creditor's conduct be

8 clearly and obviously excessive in order to sustain a cause of action." *Midas Muffler Shop*

9 *v. Ellison*, 650 P.2d 496, 499 (Ariz. Ct. App. 1982).

10        Additionally, Arizona "courts have also uniformly insisted that the emotional

11 distress suffered be *severe*." *Midas Muffler Shop v. Ellison*, 650 P.2d at 501 (Ariz. Ct. App.

12 1982); *Sport Collectors Guild Inc.*, 2018 WL 8248944, at *5 (rejecting IIED claim when

13 Plaintiff cited "no specific examples of any emotional distress suffered, such as

14 hospitalizations [or] medical treatment rendered" beyond general claims of humiliation,

15 grief, and anxiety). In providing examples for what evidence constitutes a showing of

16 severe emotional distress, one Arizona court, collecting cases, cited plaintiffs suffering a

17 heart attack; entering premature labor and having a stillbirth; experiencing a state of

18 extreme shock and hysteria such that plaintiff could not perform her job; and requiring

19 hospitalization. *Midas*, 650 P.2d at 501 (collecting cases).

20        Defendant Comenity closed Plaintiff's account and transferred it to Defendant

21 Midland on December 29, 2023. (Doc. 32 at 15). Plaintiff alleges that Defendant Midland

22 mailed Plaintiff a collection letter alerting Plaintiff that Midland was "considering forward

23 the account to an attorney." (*Id.*). Plaintiff also alleges that Midland continued its collection

24 efforts through a series of calls. (*Id.*). Plaintiff's FAC only mentions two calls, however:

25 one made on March 4, 2024, where a representative "threatened legal action," and another

26 on March 19, 2024, where Plaintiff alleges that Midland representatives again stated they

27 may have to hire an attorney and pursue legal action if no agreement was reached but also

28 communicated that they "obviously don't want that to happen." (*Id.* at 17). Plaintiff filed

the lawsuit soon after, on April 2, 2024. (Doc. 1).

Defendants' alleged conduct in this case—two phone calls and a letter over the course of three months that indicated consideration of pursuing legal action—does not involve the prolonged course of hounding or extreme volume of threatening letters and bills Arizona courts have found necessary to establish intentional infliction of emotional distress. *See generally Midas*, 650 P.2d at 499–500. Moreover, this Court cannot say that the Midland representatives' alleged language, as quoted by Plaintiff, was "so atrocious as to be utterly intolerable in a civilized community." *Id.* at 500.

Furthermore, the Court finds that Plaintiff's FAC fails to demonstrate that the emotional distress suffered was severe. While Plaintiff alleges that that he experienced anxiety, stress, sleeplessness, and a few physical manifestations of "headaches, digestive issues, and exacerbation of existing health conditions," (*Id.* at 50–51), these symptoms of distress do not amount to the level of severity contemplated by Arizona case law. Plaintiff did not provide specific examples of severe distress, such as hospitalizations or medical treatment. *See Sports Collectors Guild Inc.*, 2018 WL 8248944, at *5. "It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people." *Midas*, 650 P.2d at 501 (quoting Restatement (Second) of Torts § 46 Comment j (1965)). In sum, while Defendants' collection tactics may have upset Plaintiff, they did not amount to intentional infliction of emotional distress, and dismissal of Plaintiff's IIED claim is warranted.

### c. Motion to Strike

Defendants argue that Plaintiff's alleged class claims should be stricken because pro se litigants cannot represent the interests of others as a class representative. (Doc. 40 at 16). District courts within the Ninth Circuit have routinely granted motions to strike putative class claims on the grounds that "a pro se plaintiff cannot represent other parties and therefore cannot represent a class." *William v. First Transit Inc.*, No. 2:24-CV-00137-RGK-MAR, 2024 WL 1600641, at *3 (C.D. Cal. Feb. 27, 2024) (citing *Claiborne v. Cnty.*

1     *of Los Angeles*, 158 F. App'x 853 (9th Cir. 2005)) (granting motion to strike of pro se

2     plaintiff's putative class action claims); *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp.

3     3d 965, 988 (N.D. Cal. 2014) (striking pro se plaintiff's class allegations with leave to

4     amend if plaintiff secured counsel and counsel appeared in the action); *Yagman v. Allianz*

5     *Ins.*, No. LACV1500921JAKJCX, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015)

6     (granting motion to strike pro se plaintiff's class allegations without prejudice).

7          Because Plaintiff is a pro se plaintiff, and as such, the "face of the complaint shows

8     conclusively that the proposed class cannot be certified," the Court finds it appropriate to

9     grant Defendants' Motion to Strike without prejudice. *Langan*, 69 F. Supp. 3d at 988.

10    Plaintiff may reassert the class allegations in an amended complaint that complies with the

11    local and federal rules, "but only if he has secured the representation of experienced

12    counsel and such counsel has entered an appearance in this action." *Id.* at 989.

13    **IV.     CONCLUSION**

14         All told, "whether a complaint states a plausible claim for relief will . . . be a context-

15    specific task that requires the reviewing court to draw on its judicial experience and

16    common sense." *Iqbal*, 556 U.S. at 679. A district court should normally grant leave to

17    amend unless it determines that the pleading could not possibly be cured by allegations of

18    other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir.

19    1990).

20         While Plaintiff only needs to allege enough facts to "plausibly give rise to an

21    entitlement to relief," that has not occurred here. *Iqbal*, 556 U.S. at 679. Therefore, the

22    claims against Defendants Midland and Encore fail to satisfy the pleading standards set

23    forth by Rule 8 and 12(b)(6), and their dismissal is both warranted and necessary. Taking

24    the facts included and attached to Plaintiff's FAC as true and considering Plaintiff's

25    reiteration of those facts and his arguments in his briefing, the Court finds that the

26    allegation of additional relevant facts consistent with the FAC could not save the majority

27    of Plaintiff's claims. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,

28    1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to

1   amend should be granted unless the court determines that the allegation of other facts

2   consistent with the challenged pleading could not possibly cure the deficiency."); *Bonin v.*

3   *Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify

4   the denial of a motion for leave to amend.").

5       However, as allegations of additional facts could potentially cure some of Plaintiff's

6   claims, Plaintiff will be granted leave to amend to cure the deficiencies identified by the

7   Court throughout this Order. Specifically, Plaintiff will be granted leave to amend his

8   claims that Defendant Encore is liable for any of Defendant Midland's conduct; that

9   Defendant Midland qualifies as a "debt collector" under 15 U.S.C. § 1692a(6); and that

10  Defendant Midland failed to comply with the requirements of 15 U.S.C. § 1692g(a).

11  Additionally, as noted above, the Court finds it appropriate to grant Defendants' Motion to

12  Strike Plaintiff's class allegation without prejudice. Should Plaintiff secure the

13  representation of experienced counsel and should that counsel appear in this action,

14  Plaintiff may reassert his class allegations upon leave to amend. Plaintiff's other claims

15  against Defendants Midland and Encore are dismissed without leave to amend.

16      Accordingly,

17      **IT IS ORDERED** that Defendants Midland Credit Management Incorporated and

18  Encore Capital Group Incorporated's Motion to Dismiss (Doc. 40) is **granted**.

19      **IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Encore

20  Capital Group Incorporated are **dismissed** in their entirety with **leave to amend** to correct

21  the deficiencies identified in this order.

22      **IT IS FURTHER ORDERED** that Plaintiff's Count V is **dismissed with leave to**

23  **amend** to correct the deficiencies identified in this Order. Plaintiff's Counts IX, X, and XI

24  are **dismissed with prejudice and without leave to amend**.

25      **IT IS ORDERED** that Defendants Midland Credit Management Incorporated and

26  Encore Capital Group Incorporated's Motion to Strike Plaintiff's Putative Class Claims

27  (Doc. 40) is **granted without prejudice**.

28  ///

Dated this 10th day of January, 2025.

Honorable Steven P. Logan
United States District Judge